IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

BRENT JACOBY,  AIS # 11012126,      :

     Plaintiff,                 :

vs.                             :    CIVIL ACTION 12-366-CG-C

BALDWIN COUNTY, et al.,       :

     Defendants.            :

## REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983.  This action was referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4).  After careful review of the complaint, it is recommended that **Defendant Baldwin County** and **Defendant Sergeant Scott** be dismissed with prejudice, prior to service of process, pursuant to 28 U.S.C. §1915(e)(2)(B)(i) because the claims against each are frivolous.  This action will proceed as to all remaining claims.

## I.    Summary of Alleged Facts in Complaint

Plaintiff is a pre-trial detainee at Baldwin County Correctional Center.  (Doc. 1).  He has petitioned the Court alleging numerous constitutional rights violations arising from multiple incidents and is suing several defendants, namely, Baldwin County, Sheriff Huey Mack, Major Dale Byrne, Corporal Carr, Officer Kearse, Officer Boyington, Officer Rowell, and Sergeant Scott.  For the purposes of this report and recommendation, the Court accepts the facts contained in Plaintiff's complaint as true, but notes that later in the litigation of this action, the actual facts

1

may be different.   *See Cottone v. Jenne*, 326 F.3d 1352 n.1 (11th Cir. 2003)("Because we must accept the allegations of plaintiffs' amended complaint as true, what we set out in this opinion as 'the facts' for Rule 12(b)(6) purposes may not be actual facts."); *Calhoun v. Fischer,* No. 11-CV-0567Sr., 2012 WL 4762196, at *4 n.3 (W.D.N.Y. Oct. 3, 2012) (noting that because the initial review of the case was being conducted pursuant to 28 U.S.C. § 1915(e)(2)(B), the contents of the amended complaint had to be accepted as true).   The alleged facts of Plaintiff's complaint are as follows:

On or about April 7, 2012, Plaintiff and his three cellmates were subject to a cell frisk by Defendant Boyington, Officer Harville, and Officer Quinley.  (*Id*. at 4).  When loose tobacco was found in his cell, Plaintiff, in attempt for a lesser charge and penalty, exchanged information with the officers about the location of hidden contraband within the jail.  (*Id*.).  Plaintiff received one charge for the infraction and was told he would get an "easy sentence" of probation due to his cooperation.  (*Id*. at 5).

On or about April 13, 2012, Plaintiff informed Defendant Boyington of other contraband, a "shank," in the jail.  (*Id*.).  Plaintiff had turned in weapons prior to this occasion and the two agreed that Plaintiff "would go get the shank from the hiding spot and pass it through the tray port" to Defendant Boyington.  (*Id*.).  Thereafter, Officer Aldretti called Plaintiff over the intercom, and he retrieved the weapon and gave it to Defendant Boyington as they had discussed. (*Id*.).  Approximately one hour later, Defendant Major Byrne and Defendant Sergeant Scott charged Plaintiff with possession of a weapon, and he was removed from general population and taken to segregated housing by Defendants Boyington, Kearse, Rowell, and Officer America. (*Id*.).

When Plaintiff returned from segregation, a portion of his personal property was missing.

2

(*Id*.).[1]  He believed his property was confiscated by jail officers in retaliation for the lawsuit and numerous grievances he had filed against them.  (*Id*. at 5-6).  This upset Plaintiff and led him to scream for a ranking officer's help.  (*Id*.)  In response to Plaintiff's screaming, Defendant Boyington, Defendant Kearse, Defendant Rowell, and Officer America came to his cell with a camera, and without asking him submit to handcuffs, Defendants Kearse and Rowell entered the cell and began spraying mace on Plaintiff and his cellmate, Gardner.  (*Id*.).  Plaintiff alleges this practice of entering prior to requesting an inmate submit to handcuffs and spraying mace on all who may be present in a cell is a customary practice of the officers at the jail.  (*Id*. at 10-11).  Plaintiff was "[r]oughed up and had his face deliberately smeared in mace on the floor by [Defendant] Kearse."  (*Id*). at 6).  Plaintiff's face was rinsed with water for approximately two to three seconds before he was placed in a restraint chair.  (*Id*.)  He was retrained in the chair for eight and a half to nine hours with mace still burning on his body and received no medical attention.  (*Id*.).  Plaintiff claims this was not an incident unique to him; rather, it is a customary practice of the officers at the jail.  (*Id*. at 10).  During the time he was restrained, Plaintiff urinated on himself because he was denied access to the toilet and was not allowed to change his decontaminated clothing, and his skin continued to burn.  (*Id*. at 6).  Plaintiff alleges he was harassed and laughed at by officers while restrained.[2]  (*Id*. at 7).

On or about April 14, 2012, Defendant Boyington and Officer Harville held the disciplinary hearing for the tobacco found in Plaintiff's cell.  (*Id*. at 6).  Plaintiff was found guilty and sentenced to fourteen days in segregation, the maximum sentence for the charge.  (*Id*.)

Also, on or about April 14, 2012, Officer Robinson had Plaintff and his cellmate, Gardner

---

[1] Plaintiff states his "books, drawings, cosmetics and food was [sic] missing."  (Doc. 1 at 5).
[2] Plaintiff states that while he was restrained in the chair he was laughed at and told to, "burn bitch," and someone else yelled out, "sue me now punk."  (*Id*. at 7)(emphasis omitted).

sign a disciplinary report regarding the use of force that occurred when both inmates were sprayed with mace.  (*Id*. at 9).  Plaintiff claims Officer Robinson inadvertently gave each inmate the other's report to sign.[3]  (*Id*.).  When it was discovered that Plaintiff and Gardner had signed the wrong reports, they were charged with making false statements and unauthorized writing.  (*Id*.).  A disciplinary hearing was later held in the matter, and Plaintiff was found guilty.  (*Id*.)

On April 16, 2012, Plaintiff's disciplinary hearing was held for the charge of possessing a weapon.  (*Id*. at 8).  Defendant Boyington, who received the weapon from Plaintiff, sat on the hearing board.  (*Id*.).  Plaintiff was found guilty of the charge, given probation, and remained in segregation.  (*Id*.).

Plaintiff alleges he was denied due process when disciplined for these three infractions.[4]  (*Id*. at 7-10).  Plaintiff alleges that there was no 24-hour notice of the hearings, no receipt of a written reports of the charges against him, no opportunity to prepare a defense, no impartial hearing boards, and no recording of the hearings to preserve them for appeal purposes.  (*Id*. at 7-9).  Defendant Major Byrne approved each of the hearings.  (*Id*.).  Plaintiff appealed each disciplinary decision to Defendant Major Byrne and Defendant Sheriff Mack, but they did not respond to his pleas.  (*Id*).

After being released from segregation, Plaintiff was held in maximum custody housing

---

[3] The complaint alleges that Corporal Linds wrote Plaintiff's release date from segregation on Gardner's report and Gardner's release date from segregation on Plaintiff's report and that this mistake was later corrected on the original documents."  (*Id*. at 9).

[4] Plaintiff was found guilty at each hearing for the charges against him, but beyond the fourteen-day sentence for the tobacco contraband charge, the complaint does not identify any other imposed segregation sentences.  *Id*. at 6-10.  Plaintiff does, however, refer to being held in segregation on three separate occasions.  (*Id*. at 15, 16, and 18).  At all times while Plaintiff was in segregation he claims he was denied visits, television, books, space to walk and exercise, grooming and hygiene products, access to materials to write letters or legal documents.  (*Id*. at 9-10).  He claims he suffered mentally and physically and that such denials "psychologically torture[d]" him and "deprive[d] him of the things and rights."  (*Id*. at 10).

instead of returning to medium custody housing.[5]  In the maximum-security unit he is held with

violent offenders, has been the victim of sexual advances by other inmates,[6] and has been

physically assaulted[7].  (*Id*. at 12-13).  Plaintiff is afraid in his current maximum security housing

block because there are no surveillance cameras and assaults and "use of forces" are prevalent.[8]

(*Id*. at 13).  Plaintiff claims he requested protective custody in March and April but no response

was given, and he has asked to be moved from maximum custody, but his request was denied.[9]

(*Id*.).

Plaintiff requests injunctive relief and nominal, compensatory, and punitive damages.

(*Id*. at 1).

## II.     Standards of Review Under 28 U.S.C. § 1915(e)(2)(B).

Because Plaintiff is proceeding *in forma pauperis*, the Court is reviewing his complaint

(Doc. 1) under 28 U.S.C. § 1915(e)(2)(B).  Under § 1915(e)(2)(B)(i), a claim may be dismissed

as "frivolous where it lacks an arguable basis in law or fact."  *Neitzke v. Williams,* 490 U.S. 319,

325 (1989).[10]   A claim is frivolous as a matter of law where, *inter alia*, the defendants are

---

[5] Plaintiff alleges there was no hearing conducted or reason given regarding Plaintiff's classification being changed to the highest level. (*Id*. at 13).  From the reading of the complaint, it appears Plaintiff was still being held in maximum security at the time he filed this suit.

[6] Plaintiff states that "[i]nmates pull their penises out in front of him, [l]ust over his body, [m]ake sexual advances towards him, [g]rab his butt, [m]asterbate while looking at him, and was even woke [sic] up by a man laying in his bed naked with an erection." (*Id*. at 12).

[7] On or about May 23, 2012, Plaintiff was cut and assaulted by two inmates for not giving up his food; he received medical treatment for the injuries.  (*Id*. at 13).

[8] Plaintiff asserts that there is only one officer to guard approximately 140 inmates in the high/maximum security blocks.  (*Id*. at 20).  He claims that the officers knew that as "a small younger white male with no violence on his record[, he] would suffer from these predators."  (*Id*. at 24).

[9] In addition to the physical danger Plaintiff alleges, he also claims visits from his mother have been denied, and he has been restricted from writing his sister. (*Id*. at 22).  It appears from Plaintiff's complaint, that he and his sister are currently incarcerated at Baldwin County Correctional Center.  (*Id*.)  The Plaintiff states that there have been instances where his mother, who incurs a three hour round trip drive to the jail, was not allowed to visit them both on the same day, despite separate visiting hours and locations.  (*Id*.).

[10] The frivolity and the failure-to-state-a-claim analysis contained in *Neitzke v. Williams* was unaltered when

immune from suit, *id.* at 327, or the claim seeks to enforce a right that clearly does not exist. *Id.*

Moreover, a complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted. *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations must show plausibility. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 555, 557 (second brackets in original). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Furthermore, when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, dismissal for failure to state a claim is also warranted. *Jones v. Bock,* 549 U.S. 199, 215 (2007).

When considering a *pro se* litigant's allegations, a court gives them a liberal construction holding them to a more lenient standard than those of an attorney. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The court, however, does not have "license . . . to rewrite an otherwise deficient pleading [by a *pro se* litigant] in order to sustain an action." *GJR Investments v. County of Escambia, Fla.,* 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Randall v. Scott*, 610 F.3d 791, 710 (11th Cir. 2010) (relying on *Iqbal*, 566 U.S. 662). Furthermore, the

---

Congress enacted 28 U.S.C. § 1915(e)(2)(B) in 1996. *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir.), *cert. denied*, 534 U.S. 1044 (2001). However, dismissal is now mandatory under § 1915(e)(2)(B). *Id.* at 1348-49.

court treats as true factual allegations, but it does not treat as true conclusory assertions or a recitation of a cause of action's elements. *Iqbal*, 566 U.S. at 681.  In addition, a *pro se* litigant "is subject to the relevant law and rules of court including the Federal Rules of Civil Procedure." *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir.), *cert. denied*, 493 U.S. 863 (1989).

## III.  Analysis

### A.    Defendant Baldwin County

Plaintiff claims Defendant Baldwin County is responsible for: (1) inadequate segregated housing unit policies which deprived him of life's basic necessities; (2) inadequate use of force policies which caused him undue pain; (3) inadequate disciplinary hearing policies and procedures without due process; and (4) deliberate indifference to the safety of inmates for failing to have working security cameras and more guards in maximum custody housing blocks.

Plaintiff's claims against Defendant Baldwin County are based on policies or customs that allegedly violated Plaintiff's constitutional rights while incarcerated at Baldwin County Correctional Center.  Plaintiff, however, did not describe a policy or custom of Defendant Baldwin County.  Thus, he did not allege a plausible claim against Defendant Baldwin County and, as a consequence, fails to state a claim upon which relief can be granted against Defendant Baldwin County.  *See Twombly*, 550 U.S. at 557-58 (holding that a claim lacking in plausibility fails to state a claim upon which relief can be granted); *see also Iqbal,* 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Furthermore, in Alabama, "the duties of the counties with respect to the jails 'are limited to funding the operation of the jail and to providing facilities to house the jail.'" *Turquitt v. Jefferson Co.*, 137 F.3d 1285, 1289 (11th Cir. 1998)(quoting *Stark v. Madison County*, 678 So.2d

787, 787 (Ala.Civ.App.1996)).  This duty of the county has been construed to be limited to erecting the jail and maintaining its physical plant.  *Id*.  "The County has no authority to manage the sheriff's employees[,]" *id*., inasmuch as the sheriff is not an employee of the county but is an executive officer of the State.  *Id*. at 1288.  "[T]he sheriff's authority over the jail is totally independent of the [county]."  *Id*. at 1289 (quoting *King v. Colbert County*, 620 So.2d 623, 625 (Ala.1993)).  Thus, Defendant Baldwin County cannot be held liable for any of Plaintiff's claims for policies concerning segregated housing, excessive force, disciplinary hearings, or security in maximum housing.

While not alleged in the complaint, in the event Plaintiff seeks to hold Defendant Baldwin County liable for the actions of the other defendants, such a claim would also fail.  Holding a defendant liable solely for the actions of a subordinate or employee is not recognized as a theory of liability under § 1983.  *See Monell v. Department of Social Services of New York*, 436 U.S. 658, 691-92, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978) (holding that in a § 1983 action the city could not be held liable either vicariously or under the theory of *respondeat superior* for the acts of an employee).  "A local government may be held liable under § 1983 only for acts for which it is actually responsible, 'acts which the [local government] has officially sanctioned or ordered.'"  *Turquitt*, 137 F.3d at 1287 (*quoting Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986)), *cert. denied*,  525 U.S. 874 (1998).  Thus, Defendant Baldwin County cannot be held liable for the actions of its subordinates or employees.  A claim of this nature, therefore, would be frivolous as a matter of law.

Accordingly, Plaintiff's claims against Defendant Baldwin County are frivolous as matter of law.

**B.      Defendant Sergeant Scott**

Plaintiff states no allegations against Sergeant Scott, furthermore, the Court cannot infer or deduce from the complaint that Plaintiff has any claim against Sergeant Scott.  Therefore, as a matter of law Plaintiff's claim against Defendant Scott is frivolous pursuant 28 U.S.C. § 1915(e)(2)(B)(i).

**IV.  Conclusion.**

Based upon the foregoing reasons, it is recommended that that **Defendant Baldwin County** and **Defendant Sergeant Scott** be dismissed with prejudice, prior to service of process, pursuant to 28 U.S.C. §1915(e)(2)(B)(i) because the claims against each are frivolous.  This action will proceed as to all remaining claims.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this 29th day of November, 2012.

_s/WILLIAM E. CASSADY_____
UNITED STATES MAGISTRATE JUDGE

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.      **Objection**.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days[11] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

> A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      **Transcript (applicable Where Proceedings Tape Recorded)**.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[11] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" FED.R.CIV.P. 72(b)(2).