IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BRENT JACOBY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12–366–CG–C |
| | ) | |
| OFFICERS JOSHUA KEERS AND | ) | |
| JOHN ROWELL, IN THEIR | ) | |
| INDIVIDUAL CAPACITIES, | ) | |
| | ) | |
| Defendants. | | |

ORDER AND MEMORANDUM

This matter is before the Court on Defendants Officers Joshua Keers and John Rowell's renewed motion for summary judgment (Docs. 102, 103), Plaintiff's response in opposition (Doc. 108), and Defendants' reply thereto (Doc. 111). For the reasons stated below, the Court finds the Defendants' motion for summary judgment is due to be granted.

**I. Background Facts**

Plaintiff Brent Jacoby, at the time relevant to the instant action, was a pretrial detainee at the Baldwin County Sheriff's Corrections Center (BCSCC). By April 2012, Plaintiff had developed a reputation for being "a difficult inmate who sought to be the center of attention and would regularly disrupt the orderly running of the BCSCC." (Doc. 103-1, p. 2). Based on his disciplinary report and his volatile, problematic behavior, BCSCC officers

and officials used "extra caution when handling Jacoby."[1] *Id.* at p. 3; *see also* Doc. 45-1.

On April 13, 2012, BSCSS officials removed Plaintiff from his cell to administrative segregation pending a disciplinary hearing. (Doc. 103-2, p. 4). Upon realizing that some of his personal possessions, including a legal book from the facility's library, had not been transferred to the segregation cell, Plaintiff became angry and began "yelling, kicking the door of his cell, and becoming generally disruptive." *Id.* Defendant Rowell instructed Plaintiff to cease these actions, but Plaintiff continued his behavior. *Id.* Defendant Rowell then informed his supervisor, Staff Sergeant (now Lieutenant) Mark Wilson, of the incident and received authorization to "use pepper spray to gain [Plaintiff's] compliance." (Doc. 103-1, p. 3). Defendants recorded the incident on video. (Doc. 103-5).

The video shows Defendants, along with a third corrections officer,[2] standing outside of Plaintiff's cell door for approximately ten seconds, in which they gave verbal commands for Plaintiff to lie on the floor. (Doc. 103-5). Plaintiff failed to comply with the command, and the video shows he had wrapped his head in a some fabric and was holding a sheet in front of his body as a protective shield. *Id.* at 0:10. After the cell door opened, Defendants

---

[1] Plaintiff's disciplinary record indicates he committed self-harm with a razor on multiple occasions, allegedly threatened corrections officers with a shank, and was put on suicide watch. (*See generally* Doc. 45-1).

[2] This Court previously granted Officer Mark Boyington's motion for summary judgment (Docs. 71, 76), and the Eleventh Circuit affirmed that decision. *Jacoby v. Baldwin Cnty.*, 666 F. App'x 759, 765 n. 4 (11th Cir. 2016).

2

deployed one burst of pepper spray and commanded Plaintiff to "get on the floor" multiple times. *Id.* at 0:12–0:15. Plaintiff failed to comply with these orders, and Defendant Rowell diffused the pepper spray a second time. *Id.* at 0:21. Thereafter, Plaintiff is seen on his knees and leaning his head against the sheet, which is on the ground. *Id.* at 0:28. Defendants placed him in a supine position and handcuffed his hands behind his back. *Id.* at 0:28–0:45. The Defendants led Plaintiff out of the cell approximately one minute and four seconds after the recording begins. *Id.*

While being escorted to be decontaminated, Plaintiff began complaining about his transfer to segregation using foul language and threatening another lawsuit. (Doc. 103-5 at 1:45). He continued in an aggravated manner and spoke directly to the camera to report his grievance of being put in segregation. *Id.* at 2:17–2:24. During this time, he made no mention of any pain, discomfort, or other symptom from the pepper spray. *Id.* A few seconds later, Defendants began decontaminating Plaintiff by washing his head and face with potable water from a sink for approximately thirty seconds. *Id.* at 2:35–3:05. Plaintiff requested water to rinse his mouth, and Defendants allowed him to take multiple sips from the sink. *Id.* at 2:47–2:55. The video shows Defendants rinsed Plaintiff's face, with particular attention to the eye area. *Id.* After washing Plaintiff's head and face, Defendants continued the decontamination by gently wiping Plaintiff's face with a paper towel. *Id.* at 3:05. More than three minutes after first being sprayed, Plaintiff

3

had yet to make any complaints about pain or discomfort. *Id.* Instead, after being decontaminated, he resumed his caustic remarks about being "locked up" in segregation. *Id.* at 3:10.

Once Plaintiff was seated in the restraint chair, he lodged two complaints about his discomfort. He leaned down to wipe his eyes on his pants leg and then asked to remove his shirt because it was "soaked from mace." (Doc. 103-5 at 4:14, 4:33). Over the next thirty or so seconds, he directly addressed the camera and made the following remarks: "Leave me like this eight hours. Maced up. Can't open my eyes." *See id.* at 4:44, 4:55, 5:15. Throughout this exchange, he yelled, used foul language, and threatened to sue the officers. *Id.* at 5:15–5:37. The video then shows Defendants placing Plaintiff in the restraints and captures Plaintiff's incoherent yells. *Id.* (continuing through the end of the video).

After placing Plaintiff in the restraint chair, Defendants ordered him to be on general observation with fifteen-minute checks. (Doc. 103-2, p. 5). These checks require an officer on duty to check on Plaintiff approximately every fifteen minutes to "document the inmate's condition." (Doc. 103-1, p. 4). Photographs from these checks indicate Plaintiff was allowed to remove his "soaked" shirt and pants after about fifteen or twenty minutes. (Doc. 103-7, pp. 2–5). The photographs and accompanying Close Observation Forms indicate Plaintiff had access to his meal, had his contaminated clothing

4

removed, and had the restraints loosed over time as his demeanor became "calm [and] compliant[.]" (Docs. 103-6, 103-7, 103-1, p. 4).

**II. Procedural History**

Plaintiff initially filed this suit with a verified complaint on May 31, 2012. (Doc. 1). This Court dismissed Defendants Baldwin County and Sergeant Scott before service of process (Docs. 18, 19) and ordered the remaining defendants to file a Special Report and Answer (Doc. 20). Thereafter, the Court converted the Special Report to a motion for summary judgment (Doc. 69). This Court then entered summary judgment in favor of all Defendants on all counts after a *de novo* review of the Magistrate Judge's Report and Recommendation. (Doc. 76; *see also* Doc. 71).

Plaintiff appealed, and the Eleventh Circuit reversed the grant of summary judgment as to Plaintiff's excessive force claim against Defendants Officers Rowell and Keers and remanded to this Court for further proceedings. *Jacoby v. Baldwin Cnty.*, 666 F. App'x 759, 766 (11th Cir. 2016); *see also* Doc. 85. Thereafter, this Court entered a Rule 16(b) Scheduling Order (Doc. 97), allowing both parties to submit dispositive motions (Docs. 97, 101).

**III. Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "There mere existence of some evidence to support the nonmoving party is not sufficient for a denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting *Anderson*, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

The basic issue before the Court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. The moving party bears the burden of proving no genuine issue of material fact exists. *O'Ferrell v. United States*, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the Court must view all evidence in the light most favorable to the nonmoving party and resolve all reasonable doubts about the facts in its favor. *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash*

*Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movants satisfies their initial burden under Rule 56(c), the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Co.*, 32 F.3d 520, 524 (11th Cir. 1994) (citing *Celotext Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Otherwise stated, the nonmovant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The nonmoving party "may not rely merely on allegations or denials in its own pleadings; rather, its response must . . . set out specific facts showing a genuine issue for trial." *Vega v. Invsco Group, Ltd.*, 432 F. A'ppx 867, 870 (11th Cir. 2011) (quoting FED. R. CIV. P. 56(e)(2)). "A mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonable find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Tipton v. Bergrohr GMBH—Siegen*, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."

*Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation and citation omitted).

**IV. Analysis**

Before making arguments about the substantive law, Plaintiff raises objections about the successive nature of the summary judgment motion and the admissibility of certain evidence. The Court will address each in turn before moving on to its substantive analysis.

**A. Successive Motion for Summary Judgment**

Plaintiff objects to Defendants' motion on the basis that it is a successive motion for summary judgment and must be rejected as a matter of law. (Doc. 108, pp. 3–4). In relying on *Georgia-Pacific Consumer Products LP v. Zurich American Insurance Company*, No. 15–342–WS–B, 2016 WL 5853728 (S.D. Ala. Oct. 15, 2016), however, Plaintiff misses the mark. Unlike in *Georgia-Pacific*, Defendants in this case did not elect to file a motion for summary judgment "over two months before the deadline for filing dispositive motions." *See Georgia-Pacific Consumer Prods. LP*, 2016 WL 5853728 at *3. Rather, Defendants filed a Special Report and Answer (Doc. 40), which this Court converted to a motion for summary judgment on February 4, 2014 (Doc. 69). As this Court has previously determined, a successive motion for summary judgment is permissible after an intervening order from the Eleventh Circuit:

> Plaintiff is correct that successive motions for summary judgment are disfavored, *see Allstate Finance Corp. v.*

8

> *Zimmerman*, 296 F.2d 797, 799 (5th Cir. 1961), but a
> district court has discretion to allow successive motions.
> *See Enlow v. Tishomingo County, Miss.*, 962 F.2d 501, 507
> (5th Cir. 1992). This Court "has broad discretion in
> controlling its own docket" and is even free to "reconsider
> a previously denied summary judgment motion even in
> the absence of new material presented." *Enlow*, 962 F.2d
> at 501 n. 6 (citations omitted). After receiving the
> mandate from the Eleventh Circuit, this Court gave
> defendant permission to file a second motion for summary
> judgment without limiting the scope of any such motion.

*Johnson-Mosely v. Ala. Unified Judicial Sys.*, No. 12–184–CG–N, 2014 WL 3725339, at *2 (S.D. Ala. July 25, 2014). As in the *Johnson-Mosely* case, this Court allowed Plaintiff and Defendants the opportunity to submit dispositive motions on or before March 31, 2017. (Doc. 101). Defendants filed their motion for summary judgment on that date, and Plaintiff elected not to file any motion. Moreover, in support of their motion for summary judgment, Defendants attached video and photographic evidence that was previously unavailable. (*See* Docs. 103-5, 103-7,111-1). In light of this newly discovered evidence and the Court's amended scheduling order (Doc. 101) allowing for the submission of dispositive motions, the Court determines it is well within its own discretion to consider Defendants' motion for summary judgment and hereby overrules Plaintiff's objection.

**B. Admissibility of Evidence**

Plaintiff also objects to "several" of Defendants' exhibits supporting their motion for summary judgment as "inadmissible" for failing to include an affidavit or declaration "explaining the source, authenticity, certainty, or

9

reliability of the tendered documents." (Doc. 108, p. 5). For this reason, Plaintiff asks this Court to ignore Exhibits F, G, and H (Docs. 103-6, 103-7, 103-8). Plaintiff further requests this Court to ignore the majority of Lt. Wilson's declaration (Doc. 103-1) because it violates Federal Rules of Evidence 602 and 406. (Doc. 108, pp. 6–7).

While Plaintiff may object to these materials, the Court is not barred from considering them at the summary judgment stage so long as the proffering party (here, Defendants) can "show that the material is admissible as presented or [can] explain the admissible form that is anticipated." FED. R. CIV. P. 56, Av. Comm. Notes, "Subdisvision (c)" (2010 Amendments); *see also McLeod v. Field Asset Servs., LLC*, No. 15–654–KD–M, 2017 WL 338002 (S.D. Ala. Jan. 23, 2017) ("At this stage—on summary judgment—FAS is not required to furnish evidence in admissible form but only such evidence that *can be reduced to admissible form at trial*.") (emphasis in original).

As to Lt. Wilson's declaration, Plaintiff objects it does not comply with Federal Rule of Evidence 602 or 406. (Doc. 108, pp. 6–8). The Court, however, disagrees. Lt. Wilson bases his remarks on Plaintiff's reputation at BCSCC from his personal observations of both Plaintiff and others who work with Plaintiff (e.g. the correctional officers he supervised). The Court will not second-guess Lt. Wilson's memory or otherwise invalidate his personal observations. Further, Lt. Wilson's declaration testimony regarding the policy and procedures for decontaminating an inmate after utilizing pepper spray or

similar is also proper evidence and will not be excluded. Lt. Wilson specifically states, "it is the policy of the BCSCC to decontaminate inmates . . . ." (Doc. 103-1, p. 3). He further stated, "With an inmate like Jacoby, it is very important that control and custody be maintained throughout the decontamination process. Officers will therefore rinse the affected areas with potable water at a large sink in a closet. It always takes a bit of time for the effects of the spray to clear, but this process is normally adequate." *Id.* Considering Lt. Wilson's long tenure at BCSCC, he clearly has personal knowledge of this policy. Moreover, Courts have traditionally accepted direct testimony regarding the existence of a policy. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540–41 (11th Cir. 1988); *U.S. v. Joseph*, 611 F. App'x 946, 948 (11th Cir. 2015) ("The established procedure need not be detailed. For example, we have upheld an inventory search where the district court had indicated that a police department's policy " 'permitted impoundment under the circumstances' and 'the defendant had not countered th[e] assertion.'") (internal citation omitted). The Court thus concludes Lt. Wilson's declaration is supported from his personal observations and thus overrules Plaintiff's objections to Exhibit A (Doc. 103-1).

**C. Excessive Force**

Plaintiff alleges Defendants violated his Fourteenth Amendment right when they utilized excessive force against him by failing to decontaminate him after spraying him with pepper spray and by leaving him in a restraint

11

chair for eight hours in contaminated clothing.[3] Defendants invoke the protection of qualified immunity, which "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Mercado v. City of Orlando*, 407 F.3d 1152, 1156 (11th Cir. 2005). Qualified immunity shields officials from suit, not just from litigation; thus, if the claim against Defendants can be resolved at the summary judgment phase, the Court must appropriately do so. *See Pearson*, 555 U.S. at 231–32; *Saucier v. Katz*, 533 U.S. 194, 200–01 (2002).

As the Eleventh Circuit explained in its opinion in this case,

> To obtain qualified immunity, the defendants first must show that they were acting within their discretionary authority, *Mobley v. Palm Beach Cty. Sheriff Dep't*, 783 F.3d 1347, 1352 (11th Cir. 2015), and there is no dispute that they were. To overcome the qualified immunity defense, Jacoby must establish (1) that the defendants violated his constitutional rights and (2) "that the law clearly established those rights at the time of the alleged misconduct." *Id.* at 1352–53 (quotation mark omitted). "[The Court] may address those two inquires in either order." *Id.* at 1253.
>
> The standard we previously used to determine whether a defendant used excessive force under the Fourteenth Amendment—which required the plaintiff to show that the defendant applied the force "maliciously or sadistically for the very purpose of causing harm, *see Bozeman v. Orum*, 422 F.2d 1265, 1271 (11th Cir. 2005)—

---

[3] Plaintiff has not challenged the initial use of the pepper spray.

12

has been abrogated by *Kingsley v. Hindrickson*, 576 U.S. –
, –, 135 S.Ct. 2466 (2015). In that opinion, the Supreme
Court held that a "pretrial detainee must show only that
the force . . . used against him was objectively
unreasonable." *Kingsley*, 135 S.Ct. at 2473. As a result,
[this Court] proceed[s] with the Fourteenth Amendment
violation inquiry of the qualified immunity analysis under
*Kingsley*'s objective unreasonableness standard.

*Jacoby v. Baldwin Cnty.*, 666 F. App'x 759, 764 (11th Cir. 2016) (per curiam).

*1. Did Defendants violate Plaintiff's constitutional right?*

In *Kingsley* the Supreme Court provided guidance on applying the objective unreasonableness standard:

> A court (or judge or jury) cannot apply this standard mechanically. *See County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998). Rather, objective reasonableness turns on the "facts and circumstances of each particular case." *Graham v. Connor*, 490 U.S. 386, 396 (1989). A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with 20/20 vision of hindsight. *See ibid.* A court must also account for the "legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained," appropriately deferring to "policies and practices that in th[e] judgment" of jail officials "are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 540, 547 (1979).
>
> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. *See, e.g.*, *Graham*, *supra*, at 396. We do not consider this list to be exclusive. We mention these factors only to illustrate the

13

> types of objective circumstances potentially relevant to a determination of excessive force.

*Kingsley*, 135 S.Ct. at 2473 (internal citations edited).

In reaching its decision to reverse and remand this Court's prior grant of summary judgment in Defendants' favor, the Eleventh Circuit relied solely upon Plaintiff's verified complaint. The newly presented evidence, however, belies Plaintiff's version of events. Even taking the evidence in the light most favorable to Plaintiff, as this Court must, the undersigned cannot find Defendants' use of force meets the objective unreasonableness standard. The new evidence overcomes many of the Eleventh Circuit's concerns.

First, the video evidence shows Plaintiff on his knees with his head resting against the sheet after the second disbursement of the pepper spray. (Doc. 103-5 at 0:20–0:28). This video documents Defendants' actions within the cell: At no time does the video evidence show Defendants forcing Plaintiff's head onto the cement floor or otherwise rubbing Plaintiff's face into the pepper spray. Rather, the video shows Plaintiff's head was lying on the sheet he had held up as a protective barrier. Moreover, Plaintiff began addressing the officers and the camera at approximately 1:45 in the video. At that point in time, he had made no complaints about pain, burning, or other skin irritation. In fact, he used this time to lodge complaints about being placed in segregation: "I give these motherf*ckers a weapon and they throw me in God d*mn segregation. Take my sh*t. That's another lawsuit." (Doc. 103-5 at 1:45) (edited). He continued in the same vein for the next forty-five

seconds. Defendants, however, did not react to Plaintiff's caustic remarks and remained calm and collected. *See id.* at 2:17–2:24. Approximately two and a half minutes into the video, Defendants began washing Plaintiff's face and head in a sink with potable water. *Id.* at 2:35–3:05. The video clearly show Defendants ran water over Plaintiff's face and head for approximately thirty seconds—not just "two or three seconds"—and provided Plaintiff with water to drink or to rinse out his mouth. *Id.*

After being dried off, Plaintiff renewed his protests about his transfer to segregation, but he did not complain about any pain or irritation. *Id.* at 3:10. It is not until a minute later—and approximately four minutes after first being sprayed—that Plaintiff indicated he might be in discomfort. After being seated in the restraint chair, Plaintiff leaned down to wipe his face on his pants' leg. *Id.* at 4:14. Before the restraints were put on him, he asked for his shirt to be removed because it was "soaked from mace." *Id.* at 4:44. When Defendants did not immediately comply with his request, Plaintiff remonstrated: "[L]eave me like this eight hours. Maced up. Can't open my eyes." *Id.* at 5:15. Shortly thereafter, Plaintiff began yelling incoherently, and at the end of the video, he was still shrieking at Defendants but was not complaining about any pain, discomfort, or irritation from the spray or the restraints. *Id.* at 5:37–5:57.

Second, the photographs submitted in Exhibit G clearly show Plaintiff's version of events to be untrue. Exhibit G consists of twenty-five

photos taken during the fifteen minute observation checks. *See* Doc. 103-7. In all but the first photo, Plaintiff's shirt is removed, and both of his eyes are open. *See id.* In two of the photos, Plaintiff's contaminated pants have been removed. *Id.* at 3–4. The photos further indicate Plaintiff's restraints were loosened over the course of the afternoon and evening and show Plaintiff ate dinner. *Id.* at 11–23. Third, the Close Observation Forms submitted in Exhibit F indicate Plaintiff continued talking throughout the day, while occasionally laughing or yelling. (Doc. 103-6, p. 4).

Applying the *Kingsley* factors to the evidence, this Court cannot find Defendants acted in an objectively unreasonable manner in light of the "facts of circumstances" of this case. *See Kingsley*, 135 S.Ct. at 2473. At the time of the incident, Plaintiff had been yelling and kicking his door for a few minutes and had refused to cease, even upon receiving orders. In looking at "what the officer[s] knew at the time," which included Plaintiff's history of behavioral issues and the BCSCC's "'zero tolerance' policy," the Court cannot find Defendants acted with objective unreasonableness. *See* Doc. 103-2, pp. 2–3; *see also* Doc. 103-1, pp. 2–3. This Court recognizes the "'substantial discretion [correctional officials must have] to devise reasonable solutions to the problems they face.'" *Kingsley*, 135 S.Ct. at 2474 (quoting *Florence v. Board of Chosen Freeholders of County of Burlington*, 566 U.S. –, –, 132 S.Ct. 1510, 1515 (2012)). The video and photographic evidence clearly establish Plaintiff received an objectively reasonable decontamination treatment. He did not

make any complaints about discomfort prior to the washing of his face and head, and Defendants followed the established protocol to decontaminate Plaintiff. *See* Doc. 103-5; Doc. 103-1, p. 3. The evidence further shows Plaintiff was allowed to remove his shirt and to change his pants. Plaintiff's version of events—that he was left abandoned in the chair in clothing "soaked" in pepper spray and his own urine—holds no water. *See Burke v. Bowns*, 653 F. App'x 683, 695–96 (11th Cir. 2016) ("We do not credit assertions in Plainitff's sworn declaration to the contrary.") (citing *Scott v. Harris*, 550 U.S. 372, 380–81 (2007) ("Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.").

As such, the Court cannot find Plaintiff sat in contaminated clothing for eight hours or that he suffered any cognizable injury.[4]

*2. Was the right clearly established at the time of the event?*

---

[4] Plaintiff's reliance on *Shuford v. Conway*, 666 F. App'x 811 (11th Cir. 2016), to support a finding of a constitutional violation is misplaced. In *Shuford*, a "Rapid Response Team" used unconstitutional force against four inmates, including the use of pepper spray and a restraint chair. The evidence in *Shuford*, however, indicates that all four plaintiffs were "calm" or "quiet" and—most importantly—compliant with the RRT's commands before the use of force. *Id.* at 816. Moreover, plaintiffs made "audible responses of plain." *Id.* Here, Plaintiff clearly did not comply with Defendants' commands and did not yell, scream, or complain *in pain*. Instead, he vociferously complained about being put in segregation, and his requests to change out of his contaminated clothing were granted.

17

Even if this Court found Defendants' use of force to be objectively unreasonable, Defendants would still be entitled to qualified immunity because the right was not clearly established at the time of the incident. As the Eleventh Circuit noted,

> While *Kingsley*'s objective unreasonableness standard governs the existence of a constitutional violation, that decision was issued after the restraint chair incident took place, so it plays no part in [this Court's] determining whether the unlawfulness of Rowell and Keers' conduct was clearly established at the time it occurred. *See, e.g.*, *Belcher v. City of Foley*, 30 F.3d 1390, 1400 n. 9 (11th Cir. 1994) ("[C]ases decided after conduct in this case occurred . . . could not have clearly established the law at the time of the conduct in this case."). Instead, in order to determine whether the clearly established requirement is met in this case, we look the pre-*Kingsley* case law, which applied the old "sadistic or malicious" standard for excessive force.

*Jacoby*, 666 F. App'x at 765. The Eleventh Circuit then relied on its decision in *Danley v. Allen*, 540 F.3d 1298 (11th Cir. 2008), which held the officers' use of force to be excessive in violation of the Fourteenth Amendment. *Id*. In *Danley*, the Eleventh Circuit noted, "[w]hen jailers continue to use substantial force against a prisoner who has clearly stopped resisting—whether because he has decided to become complaint, he has been subdued, or his is otherwise incapacitated—that use of force is excessive." *Danley*, 540 F.3d at 1309. In reaching its decision, the Eleventh Circuit reasoned,

> The facts as they stand at this point in the proceedings are that Rowell and Keers left Jacoby unattended in the restraint chair after pepper-spraying him, rubbing his face in peper spray on the floor, and providing clearly inadequate decontamination. They left him there for more

> than eight hours in his pepper-sprayed and urine-soaked clothes with no opportunity for relief.[ ] Those circumstances create a fact question about whether there was an excessive continuation of the use of force after Jacoby was already subdued or restrained, and our decision in *Danley* clearly establishes the right to be free from that kind of excessive force.

*Jacoby*, 666 F. App'x at 766 (footnote omitted). As demonstrated above, however, the factual reasons compelling the Eleventh Circuit's decision no longer stand.[5] The evidence clearly demonstrates Plaintiff was allowed to remove his shirt and to change his pants; moreover, Defendants carefully and gently washed Plaintiff's face and head for approximately 30 seconds with fresh, potable water. Thus, the evidence indicates Defendants did not allow Plaintiff to languish in "pepper-sprayed and urine soaked clothes with no opportunity for relief." The photographic evidence and the observation notes fully support the inference that Plaintiff's clothes were changed and that his restraints were adjusted throughout the day as he calmed down and posed a lesser threat to himself and others. (*See* Docs. 103-6, 103-7).

Thus, the evidence cannot support an inference finding this conduct constitutes "sadistic or malicious" treatment of Plaintiff or that Defendants continued to use force after the necessity for the force ceased. Further, the evidence shows Plaintiff continued to act defiantly by yelling, cursing,

---

[5] Indeed, the Eleventh Circuit recognized this possibility: "We realize, of course, that what we consider to be the facts for present purposes may not be the actual facts determined in further proceedings." *Jacoby*, 666 F. App'x at 766 n. 5 (citing *Swint v. City of Wadley*, 5 F.3d 1435, 1439 (11th Cir. 1993), overruled on other grounds by *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35 (1995).

threatening to sue, and otherwise complaining about his transfer to segregation. As such, the use of the restraint chair was merited and was not excessive force under *Danley* or *Shuford*. *See Danley*, 540 F.3d at 1308–09; *Shuford*, 666 F. App'x at 817–18. Thus, the Court finds the use of force was appropriate to the situation and thus did not violate a clearly established right.

## V. Conclusion

For the reasons stated above, this Court finds Defendants Rowell and Keer are entitled to qualified immunity and thus deems it proper to **GRANT** their motion for summary judgment (Doc. 102). This matter is therefore **DISMISSED with prejudice**, and judgment in favor of Defendants will be entered separately.

**DONE** and **ORDERED** this 12th day of July, 2017.

/s/  Callie V. S. Granade
SENIOR UNITED STATES DISTRICT JUDGE